384 P.2d 891

**Andrew LANDAVAZO, Plaintiff-Appellee,**

**v.**

**CREDIT BUREAU OF ALBUQUERQUE, Defendant-Appellant.**

No. 6951.

Supreme Court of New Mexico.

Aug. 26, 1963.

Wilson, Ahern & Montgomery, Albuquerque, for appellant.

. Lorenzo A. Chavez, Arturo G. Ortega, Melvin L. Robins, Albuquerque, for appellee.

. MOISE, Justice.

Defendant-appellant was sued by plaintiff-appellee for malicious prosecution. After trial before the court sitting without a jury, findings of fact and conclusions of law favorable to plaintiff were entered and a judgment in the amount of $750.00 was awarded.

Defendant has appealed, claiming that the case is controlled by our decision in Johnson v. Walker-Smith Co., 47 N.M. 310, 142 P.2d 546, which held that an action would not lie for malicious institution and prosecution of a civil suit without probable cause, absent arrest of the plaintiff, seizure of his property, or injuries other than those necessarily sustained in all ordinary law suits.

It would serve no useful purpose to relate the facts out of which this suit arose. It is sufficient to point out they clearly establish an inexcusable and highly improper course of conduct, including recourse to court procedure by defendant intended to force plaintiff to pay a bill which he clearly did not owe. While in no way wishing to be understood as condoning the conduct of defendant, which we deem to have been most reprehensible, there nevertheless were neither allegations nor proof of arrest, seizure of property of plaintiff, or of damages different from those necessarily incident to most if not all litigation. It follows that Johnson v. Walker-Smith Co., supra, is controlling and it was error for the trial court to hold otherwise.

Plaintiff argues that his allegations are more detailed than those present in Johnson v. Walker-Smith Co., supra. He gains nothing thereby. The allegations and proof here present still fall short of what was there required to establish a cause of action. Neither do the authorities relied on by plaintiff persuade us that we should over-rule Johnson v. Walker-Smith Co., supra. It follows that the judgment appealed from should be reversed and the cause remanded with instructions to set aside the judgment. and dismiss the cause with prejudice. It is so ordered.

COMPTON, C. J., and CHAVEZ and NOBLE, JJ., concur.

GALLEGOS, District Judge (dissenting).

I am unable to agree with the majority opinion. One sentence in the opinion seems to me of interest; it states: "It would serve no useful purpose to relate the facts out of which this suit arose." It seems to me that it is pertinent in this case and perhaps in all cases to relate the material facts out of which a case arose so that the law applicable to those facts may be invoked and applied, and the opinion may possibly be of benefit for future cases under similar facts; therefore, in writing this opinion, it is my purpose to relate the material facts in the case.

In 1954, plaintiff-appellee, Andrew Landavazo, received a letter from defendant-appellant, Credit Bureau of Albuquerque, stating that the credit bureau had a bill for collection on an account due by plaintiff to a doctor and that the credit bureau would hold plaintiff's pay check until he paid the bill, that this bill had been incurred by plaintiff while he lived in Albuquerque. The

plaintiff received the letter in Belen. The following Saturday the plaintiff went to the defendant's place of business and talked to an agent and employee of the defendant who, besides claiming that plaintiff owed the doctor bill, stated to the plaintiff that the credit bureau also had a claim for collection against the plaintiff from Southern Union Gas Company for $49.50.

The plaintiff's wife, who accompanied the plaintiff, had brought some check stubs and after some conversation between the plaintiff and the defendant's employee and agent, it was determined that the plaintiff did not owe either of the accounts and that the claims were actually against a man who had a similar surname as that of the plaintiff, but different given name and who was a distant relative of plaintiff.

The plaintiff asked the defendant's agent if his name would be taken off the records as it could damage his credit and the agent assured the plaintiff that his name would be cleared out of the records and thanked plaintiff for coming from Belen to clear the matter.

In the latter part of 1959 plaintiff moved back to Albuquerque and rented a house but decided to purchase a home from Dale Bellamah Construction Company and signed a binder for the purchase of the house and started negotiations for a loan with which to purchase the house.

A credit inquiry of plaintiff was made and plaintiff was advised that everything had gone all right with the loan except for a statement in the credit report from Credit Bureau of Albuquerque, appellant herein, that plaintiff owed a bill to the Southern Union Gas Company, the same account heretofor mentioned; the credit report also contained derogatory information concerning the plaintiff and the plaintiff was told that the non-payment of the Southern Union Gas Company bill was holding approval of the loan for the purchase of the house. Later the plaintiff received a telephone call from an agent and employee of the defendant at the place of business where plaintiff was working and this agent advised the plaintiff to come and pay the bill and in that way the loan would go through immediately. The plaintiff refused to pay it and was then told by the defendant's agent that whether he owed the bill or not he should pay it as it would be worth it to him to pay $49.00 to get the loan through. In this connection, this is the exact testimony given by the plaintiff wherein he stated that the defendant's agent told him:

"Well, whether you owe it or not, you should come and pay the bill, it should be worth it to you paying $49.00 to get this loan through."

I have read very carefully every word in the transcript in this case and I have failed to find where this testimony of the plaintiff

was contradicted or denied by anyone, so it must be taken as true.

The plaintiff still refused to agree to pay the bill and two or three days later plaintiff received a notice to appear in a Justice of the Peace court in Albuquerque to answer a suit filed by Credit Bureau of Albuquerque, appellant herein, on the account claimed by Southern Union Gas Company. The plaintiff and his attorney appeared in court at the time stated but at the request of an agent and employee of the defendant who was present, the case was continued and soon thereafter the case against the plaintiff was dismissed at the request of the defendant's agent.

In February, 1960, plaintiff closed the transaction for the purchase of the house. On March 23, 1960, plaintiff filed suit for malicious prosecution against the defendant-appellant in the district court of Bernalillo County, alleging the occurrences hereinbefore mentioned.

The trial court substantially covered the facts as above stated in his findings and also found from the evidence that the plaintiff was not indebted to Southern Union Gas Company and that due to the conduct of the defendant and its agents and employees the plaintiff was humiliated, embarrassed, and required to take time away from his employment to discuss the matters with defendant and other persons, including the sales personnel of Dale Bellamah Construction Company; plaintiff was required to make explanations to his superiors at his place of employment as to his credit rating and was subjected to frequent questioning by friends and relatives as to why he was unable to complete the purchase of the home. The trial court concluded that prior to institution of the action in the Justice of the Peace court the defendant had sufficient notice and warning from plaintiff that plaintiff was not indebted to Southern Union Gas Company and that the defendant, in filing the civil action in a Justice of the Peace court, abused the civil process of the courts in attempting to compel plaintiff to pay a bill which defendant knew or should have known was not owed by plaintiff, and awarded plaintiff judgment against defendant for $750.00 and costs. This appeal followed.

The majority seems satisfied that Johnson v. Walker-Smith Co., 47 N.M. 310, 142 P.2d 546, is controlling and is the only case cited in the opinion.

In Johnson, supra, suit was filed alleging in substance the allegations found in the complaint in this case; the complaint was dismissed on motion of the defendant. The Supreme Court upheld the action of the district court. But in Johnson we do not have facts and elements that are present in this case, these facts and circumstances developed by the evidence introduced in the present case. The defendant sued on a debt its agents knew was not owing; the

defendant was to give a credit report on plaintiff's credit rating as plaintiff had applied for a loan with which to purchase a home; the defendant, in effect, told plaintiff after the loan was being held up because of adverse report by the defendant on plaintiff's credit, which report contained also defamatory remarks with reference to plaintiff, that if the plaintiff would pay the $49.00 a favorable report would follow; whether plaintiff owed the debt or not, he should pay and it should be worth it to him to pay that amount in order to obtain a favorable report on his credit rating. Plaintiff's loan approval was delayed by the defendant's apparent arbitrary and unreasonable actions. This delay alone to my way of thinking resulted in damage to the plaintiff. The plaintiff was called by the defendant at his place of employment, taken away from his time which he should have been utilizing for his employer. Defendant's demand from the plaintiff that he pay a debt which defendant knew plaintiff did not owe in return for a favorable report on his credit seems to me amounts to an attempt to extort money.

Further, this action on the part of the defendant was not fair or honest either to the plaintiff or to the company which was contemplating making a loan to plaintiff. The defendant would make a favorable credit report on plaintiff if plaintiff paid the $49.00 which plaintiff did not owe. This was unfair to the plaintiff. The loan company would get a favorable report on plaintiff apparently not based on the facts or merits of plaintiff but because the defendant had been paid by the plaintiff a sum which the plaintiff did not owe the defendant.

It is my intention to give some history and review of the law in malicious prosecution actions because I believe that it is of benefit to the bar and to anyone who may become concerned with such actions.

In this case I think we have all the elements necessary for recovery in an action for malicious prosecution. There was malice, want of probable cause, and determination of the suit in favor of plaintiff herein in the Justice of the Peace court, and resulting damage. In proving malice in this type of action it is not necessary to prove actual spite, ill will or grudge, but is only enough to prove wrongful or improper motive. 34 Am.Jur. 728, § 45.

"While, as the name implies, malice is the root of the action of malicious prosecution, malice alone, even when extreme, is not enough; want of probable cause for the institution of the original proceedings, whether civil or criminal, must also be shown. Want of probable cause is thus the very gist of the action. * * *" 34 Am.Jur. 729, § 46.

It clearly appears from the facts in this case that probable cause was not present in

the filing of the suit by the defendant against the plaintiff herein in the Justice of the Peace court. And, furthermore, defendant finally decided to dismiss the suit, after plaintiff and his attorney had appeared and after defendant herein asked for a continuance.

" * * * the voluntary dismissal of a civil action has been held to be prima facie evidence that it was instituted without probable cause, and to throw upon the defendant the burden of showing that there was probable cause for bringing the action." 34 Am.Jur. 743, § 63.

Originally, actions for malicious prosecution and malicious abuse of process applied only to criminal actions. Now it appears universally that the holdings include actions based upon civil proceedings.

In reviewing the authorities various "rules" are found, one of which is called the "English" or "strict" rule, which holds that no action will lie for the institution or prosecution of a civil action maliciously and without probable cause where there has been no arrest, seizure of property, and no special injury sustained.

In America there appear to be several "rules," or lines of authority, one of which rules is to the effect that an action will lie where the civil action, in which there has been no arrest of the person or seizure of property, has caused special injury; another

rule is that an action will not lie for the malicious prosecution of a civil suit unless there has been an interference with the person or property of the defendant or other special damages, and another rule is that an action will lie where the civil action is instituted maliciously and without probable cause, even though there has been no interference with the person or property of the defendant in the original suit and no special injury shown.

In England prior to the statute of Marlbridge, the English courts generally held that arrest of the person or seizure of his property in the original action was not essential to a recovery in an action for malicious prosecution.

Some American courts have called this the ancient English Rule and after the passage of the Marlbridge statute and other acts in England which have followed, the English courts generally have held that interference, that is, arrest of person or seizure of property, is essential.

My research leads me to the conclusion that the English Rule is not universally or even largely recognized by the courts in the United States, and it appears that the rule which prevailed in England before the Marlbridge statute is the prevailing rule in the United States. See 85 A.L.R. 412.

There is a review of the authorities in 150 A.L.R. 897, in regard to the prosecution of civil suits, without arrest of the person

or seizure of property, as grounds for actions for malicious prosecution. From this annotation it appears that at least in a numerical majority of the jurisdictions it has been held that an action of malicious prosecution will lie for the institution of a civil action maliciously and without probable cause, even though there has been no interference with the person or property of the defendant in the original suit, and no special injury shown.

It appears that many courts disallow recovery on the general principle that it may cause vexations and numerous lawsuits if recovery is easily allowed in malicious prosecution actions, and that such actions should be discouraged, some of these courts stating that damages or injuries caused by malicious prosecution actions come under the maxim known to the law as damnum absque injuria, injury without remedy. Other courts answer this proposition by stating that many unnecessary and unfounded actions perhaps would not be instituted if recovery is allowed in malicious prosecution actions when the original action is brought for retaliatory or other ulterior purposes and clearly abuses the process of the courts and, in allowing recovery in proper cases, many unfounded actions perhaps would be eliminated, and these courts follow another maxim known to the common law which states that "for every wrong the law will give legal redress."

It is well recognized that before one can maintain an action for malicious prosecution against him, the original proceedings must have terminated in his favor. 34 Am.Jur. 718, § 27. In this case the original proceeding which was filed against the plaintiff herein was dismissed as has been heretofore stated, and therefore such proceeding terminated in his favor.

It is generally held in the United States that if special injury or special damage has been caused the defendant in the original action, then he is allowed recovery in an action for malicious prosecution. And it has been held that if the action is maliciously prosecuted and without probable cause and as to entail unusual hardship upon the defendant in the original suit, and has subjected him to special loss of property or reputation, he should be compensated. See 150 A.L.R. 897 to 916.

Certainly, by quoting excerpts from Johnson, supra, one can say the law laid down in that case applies to the present case, but when a thorough comparison is made of all the facts and circumstances of the two cases, in my humble judgment there is a distinct difference. I may also quote from the opinion in Johnson at page 316, of 47 N.M., at page 549 of 142 P.2d, where the following appears:

"It will be observed that the rule we here adopt extends the doctrine no further than to cases prosecuted in the

usual manner, and where defendant suffers no damages other than necessarily attend all suits brought upon like causes of action. * * * But, if his property is seized or he is arrested, or the suit is so prosecuted as to cause special damages, not common to the ordinary law suit, he should be compensated."

The suit brought in the Justice of the Peace court by the defendant against the plaintiff was not prosecuted in the usual manner; it was prosecuted on a claim which was not owing and which the party filing the suit knew was not owing. Probable cause did not exist for bringing the suit, malice in law did exist.

It must also be remembered that in Johnson the defendant interposed a motion to dismiss which among other things stated that no special injury was suffered by the plaintiff, as shown by the pleadings, except such alleged injuries as necessarily result in any and all civil suits to recover for like causes of action.

The failure to allege special injury or damage in Johnson may have been the fault of the pleader, or such injuries or damages may not have existed.

In the present case, proof showed damages to the plaintiff which I am convinced are not the results which occur in any and all civil suits and this is a material distinction which I find in this case and in Johnson, supra.

If the actions of the defendant in this case are approved and condoned we shall directly and in positive terms tell the Credit Bureau of Albuquerque and any other company or individual that they have the legal right to threaten people with reprisals unless they come forward and pay certain amounts of money; if this does not bring forth payment then they can go further and threaten people with suits on debts not owing and actually institute suits under such circumstances and thereby compel any number of individuals to spend time and money and be actually damaged by such unfounded actions and which are known to the plaintiff to be unfounded. To me this is clearly an abuse of legal process and should not be condoned; however, as a practical matter I venture to say that many people who are sued on debts which they do not owe will perhaps succumb and pay small or large amounts rather than be exposed to the expense and harassment and embarrassment of defending a lawsuit; perhaps they will think that it is cheaper to pay and keep the matter quiet, and undoubtedly many timid people would rather pay than defend themselves; bringing such suits can be repeated time and again by unscrupulous persons, and to those who may have the fortitude to defend themselves are we to say that we cannot give redress?

It seems to me that Johnson, as seen by the majority, is a bar to all suits of this nature, because it appears that regardless of what damages may result from a malicious prosecution action, perhaps it can be said at all times by some persons that any damages are those that result in the ordinary suit and therefore no recovery can be had.

It is my sincere opinion that the judgment of the district court should be affirmed. The majority holding otherwise, I therefore dissent.