152 N.J. Super. 344 (1977)
377 A.2d 1220
FIELDER AGENCY, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
ELDAN CONSTRUCTION CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 17, 1977.
*346 Mr. Michael V. Camerino for plaintiff (Messrs. Ozzard, Rizzolo, Klein, Mauro and Savo, attorneys).
Mr. Abraham I. Mayer for defendant (Messrs. Mayer and Mayer, attorneys).
GAYNOR, J.C.C., Temporarily Assigned.
This matter is now before the court on plaintiff's motion for summary judgment dismissing defendant's counterclaim for compensatory and punitive damages resulting from plaintiff's alleged malicious abuse of process.
The action giving rise to this counterclaim was instituted by plaintiff, a licensed real estate broker, to recover real estate commissions allegedly due from defendant under exclusive listing agreements, together with damages because of the alleged wrongful breach by defendant of a sales contract, thereby causing plaintiff the loss of a commission. Defendant's counterclaim for malicious abuse of process was severed, *347 and the trial of plaintiff's complaint before a jury resulted in a no cause.
Although considerable evidence relating to the business association of the parties was presented during the course of the trial of plaintiff's cause of action, the principal issues of fact involved the circumstances under which several exclusive listing agreements were executed by defendant and the reasons for the termination of the sales contract. It was plaintiff's contention, and proofs were offered to support it, that the listing agreements were entered into by defendant after they had been fully prepared by plaintiff and for the purpose of assuring plaintiff of at least the listing broker's share of the total commission in the event that it was not the selling broker. Defendant contended that the agreements were executed by it in blank in reliance upon plaintiff's assurance that the forms would be completed so as to provide that other brokers, as selected by defendant, could negotiate sales of the subject properties and, if sales were consummated as a result of such negotiations, that full commissions would be payable to these brokers and plaintiff would not be entitled to a listing broker's share of the commissions. By returning a verdict of no cause the jury indicated its conclusion that plaintiff had failed to sustain its allegations by the required standard of proof.
A similar result was reached with respect to plaintiff's claim for damages because of the alleged wrongful termination of the sales contract by defendant. This claim involved the factual issue of the prospective purchaser's financial ability or inability to consummate the contract. The evidence presented by plaintiff in support of its contention did not include the testimony of the contract purchasers which, of course, would have been the best evidence of whether they were able to complete the proposed purchase. Although the jury was not instructed that an adverse inference might be drawn from the failure to produce these persons as witnesses, the absence of such testimony, together with the explanations offered on behalf of defendant, presumably caused the jury *348 to conclude that plaintiff had not met its burden of proving this claim by a preponderance of the evidence.
In its counterclaim defendant alleges that plaintiff's institution of its suit was fraudulent and actuated by malice, and that defendant suffered damages as a result thereof. It appears from the pleadings, affidavits and brief filed on behalf of defendant that the damages allegedly sustained were the legal fees and costs incurred in defending against plaintiff's claims and also the injury to defendant's reputation and business resulting from plaintiff's alleged slanderous remarks concerning defendant's evasion of its just debts by refusing to pay commissions due to the plaintiff.
It is unclear from defendant's counterclaim whether the cause of action being asserted is that recognized as malicious use of process or that denominated malicious abuse of process. A distinction exists between these two causes of action. In substance, "malicious use" is the employment of process for its ostensible purpose although without reasonable or probable cause, whereas "malicious abuse" is the employment of a process in a manner not contemplated by law. Ash v. Cohn, 119 N.J.L. 54 (E. & A. 1937).
A comprehensive review of the elements of the tort of malicious abuse of process is set forth in Gambocz v. Apel, 102 N.J. Super. 123 (App. Div.), certif. den. 52 N.J. 485 (1968). As therein stated, the gist of this tort is the misuse of process justified in itself for a purpose other than that which it was designed to accomplish, and the essential elements are an ulterior motive and some further act after the issuance of process representing the perversion of the legitimate use of the process. Bad motives or malicious intent leading to the institution of a civil action are insufficient to support a cause of action for malicious abuse of process. A showing of some coercive or illegitimate use of the judicial process is necessary to a claim that there has been an abuse of the process. Penwag Property Co. v. Landau, 148 N.J. Super. 493 (App. Div. 1977); Mayflower Industries v. Thor Corp., 15 N.J. Super. 139 (Ch. Div. 1951), aff'd 9 N.J. *349 605 (1952); 1 Am. Jur. Abuse of Process, § 4; Prosser, Law of Torts (4 ed. 1971), § 121. It is undisputed that the process caused to be issued by plaintiff in the present case was regular and was being utilized to obtain a determination of the commission controversy existing between a real estate broker and the seller of real property. As such, it constituted a proper use of the judicial process. Even if the claims therein asserted by plaintiff were actuated by unjust motives, no facts have been presented which would support a conclusion or an inference that the suit was instituted to accomplish an end outside the scope of the litigation itself. The required elements of this purported cause of action are therefore lacking.
Viewing defendant's counterclaim as one for malicious use of process, or as sometimes referred to, malicious prosecution, we observe that a successful recovery under such a cause of action requires defendant to establish that (1) the suit was brought against it without probable cause, (2) plaintiff was actuated by malice, (3) the action has been terminated favorably to defendant and (4) defendant counterclaimant suffered a special grievance. Mayflower Industries v. Thor Corp., supra. As indicated, plaintiff's action was terminated in defendant's favor. For the purposes of this motion we will assume that plaintiff's suit was brought without probable cause and was actuated by malice. It is therefore unnecessary to consider the arguments advanced by counsel relating to these issues. The remaining element requiring consideration is whether the damages asserted by defendant constitute the special injury necessary to sustain the cause of action asserted by the counterclaim.
The rule in this State is that the special injury or grievance required to support a suit for malicious prosecution of a civil action is some interference with a party's personal liberty or freedom or damage different from and in addition to the ordinary litigation expenses incurred in *350 defense of the primary action.[1]Potts v. Imlay, 4 N.J.L. 377 (Sup. Ct. 1816); Bitz v. Meyer, 40 N.J.L. 252 (Sup. Ct. 1878); Schneider v. Mueller, 132 N.J.L. 163 (E. & A. 1944); Mayflower Industries v. Thor Corp., supra; Penwag Property Co. v. Landau, supra. The so-called English rule found early acceptance in New Jersey and has been reaffirmed recently in Penwag Property Co. v. Landau, supra, wherein the court observed:
This essential element of proof of special grievance connotes damage different from and beyond the expenses and counsel fees entailed in the defense of the civil suit. As early as 1816, the Supreme Court in Potts v. Imlay, 4 N.J.L. 377, 386 (Sup. Ct. 1816), laid down the rule that:
(T)his action cannot be maintained for prosecuting a civil suit in a court of common law having competent jurisdiction by the party himself in interest, unless the defendant has, upon such prosecution been arrested without cause and deprived of his liberty, or made to suffer other special grievance different from, and superadded to the ordinary expense of a defence.

* * * * * * * *
Special grievance in the context of malicious civil litigation has been held to consist of the interference with a party's personal liberty or property.
Actions which have been considered sufficient to constitute the required interference with personal liberty or property are the appointment of a receiver, the obtaining of an injunction, the issuance of a writ of attachment or replevin, the filing of a lis pendens, the issuance of an order of arrest, the garnishment of a bank account, the filing of a petition in bankruptcy and the wrongful interference with possession or enjoyment of property. See Penwag Property Co. v. Landau, supra; Mayflower Industries v. Thor Corp., supra; 52 Am. Jur.2d, Malicious Prosecution, § 11.
The question of whether injury to a defendant's reputation for financial responsibility in the operation of its business *351 is such special damage sufficient to sustain a cause of action for malicious prosecution has not heretofore been a subject of judicial consideration in New Jersey although it has received attention in other jurisdictions.
The institution and prosecution of the complaint did not result in any restraint upon the operation of defendant's business or use of its property. Giving full credence to defendant's allegations of damage, the most that could be said is that the suit affected defendant's reputation for financial responsibility and caused an expenditure for litigation expenses. However, such consequences are likely to result from all actions in which an asserted monetary obligation is sought to be enforced as they inhere in the very nature of the action whether meritorious or not. They are not peculiar to the defendant in the present case and must be accepted as an uncompensated burden of litigation. Similarly, a suit on a promissory note, or an account, or for breach of contract may result in damage to the credit or financial reputation of a defendant as claims based upon nonpayment or nonperformance of obligations inherently suggest financial irresponsibility. The special damage which is required of defendant herein is an injury arising from the action which would not ordinarily result in all similar causes seeking recovery of damages for breach of a real estate listing agreement. The damages claimed by defendant do not as a matter of law constitute such an injury.
To permit the prosecution of a claim for the malicious institution of a civil action based upon damages which do not constitute a special grievance would result in litigation becoming interminable, with the failure of one suit being grounds for the institution of another. Also, the assertion of rights either by means of a complaint, answer or counterclaim might well be compromised for fear of liability resulting from the failure of the action. This would be contrary to the policy of the law which is to open the courts to all who have a grievance, and seek remedial action therefor, without restraint through fear of liability in the event the *352 action fails. In the ordinary case, i.e., where the groundless claim results in no injury peculiar to defendant or no interference with his liberty or property, a plaintiff should not be required to defend against a subsequent suit charging him with malicious litigation.
In the absence of such special injury defendant has failed to establish the cause of action forming the basis of its counterclaim and accordingly is not entitled to a recovery for costs and counsel fees incurred in the defense of the wrongful action nor to an award for punitive damages. See Penwag Property Co. v. Landau and Mayflower Industries v. Thor Corp., supra.
Similar conclusions have been reached in those cases in other jurisdictions which have considered claims of injury to reputation, credit standing or financial responsibility. In Johnson v. Walker-Smith Co., 47 N.M. 310, 142 P.2d 546 (Sup. Ct. 1943), after reviewing the opposing rules as to the requirement of special damage as necessary proof in an action for malicious prosecution of a civil suit, the court held that jeopardy to plaintiff's credit standing resulting from the suit brought against him maliciously and without cause was insufficient to constitute the requisite special damage, stating in part:
It will be observed that the rule we here adopt extends the doctrine no further than to cases prosecuted in the usual manner, and where defendant suffers no damages other than necessarily attend all suits brought upon like causes of action. If the bringing of the action operates to impose care and expense, or even to cast discredit and suspicion upon the defendant, the same results follow many actions of like character, whether meritorious or not. They are uncompensated burdens of litigation. State ex rel. Stanley et al. v. Lujan, 43 N.M. 348, 93 P. 2d 1002. But, if his property is seized or he is arrested, or the suit is so prosecuted as to cause special damages, not common to the ordinary law suit, he should be compensated.
Alleged injury to a party's reputation and mental anguish resulting from actions instituted maliciously and without cause has also been considered as not being the special injury *353 required to sustain a malicious prosecution action in Soffos v. Eaton, 39 A.2d 865 (D.C. Mun. Ct. App. 1944). In so holding the court observed:
* * * Practically every defendant to a law suit suffers some damage to his reputation. The damage will vary according to the nature of the suit, the amount of publicity it receives, and the attending circumstances, but this is only a matter of degree. Few law suits enhance a defendant's reputation; the great majority of defendants suffer some injury to reputation.
Also, in Aalfs v. Aalfs, 246 Iowa 158, 66 N.W.2d 121 (Sup. Ct. 1954), the court dismissed a complaint for malicious prosecution of a suit to rescind a contract for the sale of an interest in a going business, supported by allegations of fraud and misrepresentation, as the damage claimed was deemed to be not the special injury required to sustain a cause of action for malicious prosecution. The asserted damages, in addition to litigation expenses, included damage to reputation, inability to obtain bank credit and interference with the normal operation of plaintiff's manufacturing business. It was considered that such damages were not peculiar to the defendant in the original suit, but rather were inherent to the very nature of that action.
A like result was arrived at in Schier v. Denny, 12 Wis.2d 544, 107 N.W.2d 611 (Sup. Ct. 1961), a malicious prosecution action based upon a complaint filed with the Real Estate Brokers' Board, in which the revocation of a broker's license was sought because of alleged improper conduct by the broker. The injury claimed to have been suffered as a result of the complaint related to the damage to the plaintiff's reputation as a reputable real estate broker and the interference with the operation of his business occasioned by the resignation of employees as a consequence of the complaint. These damages were considered insufficient to constitute the type of special injury necessary to support plaintiff's cause of action.
*354 The injury which defendant allegedly suffered in the present case as a result of the institution of the suit by plaintiff does not come within the general rule established in this State applicable to malicious prosecution of a civil action and, as indicated by the above cited authorities, such allegations of damage have been expressly rejected by courts of other jurisdictions. We therefore have no hesitation in concluding that the asserted damage to defendant's reputation for financial responsibility, arising from the wrongful institution by plaintiff of its suit for real estate commissions, does not as a matter of law constitute the special grievance or injury required to sustain its counterclaim.
Accordingly, plaintiff's motion for summary judgment dismissing the counterclaim will be granted.
NOTES
[1] It is noted that this is a minority rule and that its supporting rational has been criticized as being unrealistic and of questionable validity. See Prosser, Law of Torts (4 ed. 1971), § 120.